UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JOHN POST, <br><br> Plaintiff, <br><br> v. <br><br> SOLITON, INC., WALTER V. KLEMP, BRADLEY HAUSER, CHRISTOPHER CAPELLI, JONATHAN P. FOSTER, DANIKA HARRISON, NIQUETTE HUNT, and MICHAEL KAMINER, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

---

Plaintiff John Post ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against Soliton, Inc. ("Soliton" or the "Company") and the members of Soliton's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Soliton will be acquired by AbbVie Inc. ("AbbVie") through AbbVie's subsidiary Scout Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On May 10, 2021, Soliton and Allergan Aesthetics ("Allergan"), an AbbVie company, issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 8, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, Soliton shareholders will receive $22.60 in cash for each share of Soliton common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $550 million.

3. On June 15, 2021, Soliton filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Soliton stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Soliton management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the special committee of the Board's ("Special Committee") financial advisor, Guggenheim Securities, LLC ("Guggenheim"); and (ii) Guggenheim's and Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Soliton stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Soliton's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Soliton's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Soliton.

9. Defendant Soliton is a Delaware corporation, with its principal executive offices located at 5304 Ashbrook Drive, Houston, Texas 77081. Soliton is a medical device company with a novel and proprietary platform technology licensed from The University of Texas M.D. Anderson Cancer Center ("MD Anderson"). Soliton's shares trade on the Nasdaq Capital Market under the ticker symbol "SOLY."

10. Defendant Walter V. Klemp ("Klemp") is a co-founder of the Company and has served as Executive Chairman and a director since July 2018. Defendant Klemp also previously served as Chief Executive Officer ("CEO") of the Company.

11. Defendant Bradley Hauser ("Hauser") has been President and CEO of the Company since November 2, 2020, and a director since June 15, 2018.

12. Defendant Christopher Capelli ("Capelli") is a co-founder of the Company, Vice Chairman of the Board, and has been Chief Science Officer ("CSO") since September 2015, and a director of the Company since July 2018. Defendant Capelli previously served as the Company's President and CEO from August 2018 to October 2020.

13. Defendant Jonathan P. Foster ("Foster") has been a director of the Company since June 15, 2018.

14. Defendant Danika Harrison ("Harrison") has been a director of the Company since June 15, 2018.

15. Defendant Niquette Hunt ("Hunt") has been a director of the Company since October 2020.

16. Defendant Michael Kaminer ("Kaminer") has been a director of the Company since October 2020.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18. AbbVie is a Delaware corporation with its principal executive offices located at 1 North Waukegan Road, North Chicago, Illinois. It is a global, research-based biopharmaceutical company developing and marketing advanced therapies that address some of the world's most complex and serious diseases. AbbVie employed approximately 47,000 employees in over 70 countries as of January 31, 2021. AbbVie's shares trade on the New York Stock Exchange under the ticker symbol "ABBV."

19. Merger Sub is a Delaware corporation and a wholly owned subsidiary of AbbVie.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Soliton is a medical technology company focused on developing and commercializing products utilizing its proprietary designed acoustic shockwave technology platform referred to as Rapid Acoustic Pulse ("RAP"). Soliton is a pre-revenue stage company with its first product, RESONIC, the brand name for its RAP device, preparing for launch for the removal of tattoos and the reduction of cellulite. Soliton's RESONIC console uses rapid pulses of designed acoustic shockwaves to disrupt cellular structures in the dermal and subdermal tissue. The uniqueness of Soliton's designed shockwave allows Soliton to target the differential in stiffness between cellular structures and generate a shearing effect that Soliton believes represents a platform technology potentially useful in tattoo removal, cellulite treatment, fibrotic scar treatment and other indications. Soliton's technology allows the disruption of targeted structures within the skin with only minimal discomfort and without additional treatment-related downtime for tattoo removal or any downtime for cellulite treatment.

21. On May 12, 2021, the Company announced its first quarter 2021 financial results and business developments. Soliton received U.S. Food and Drug Administration ("FDA") 510(k) clearance for short-term improvement in the appearance of cellulite. The Company also received FDA Special 510(k) clearance for modifications to the RESONIC device to facilitate ease of use in commercial settings and successfully completed all required safety testing including Quality System/Current Good Manufacturing Practice regulations for medical devices (21 CFR Part 820) inspection from the FDA. During the quarter, Soliton entered into a collaboration with the U.S. Navy to conduct a 12-week proof-of-concept clinical study to evaluate the safety and efficacy of

RESONIC for the improvement in the appearance of fibrotic scars.  Additionally, the Company initiated a second pre-clinical study in animals for the treatment of liver fibrosis to validate positive results demonstrated in Soliton's initial pre-clinical study.

**The Proposed Transaction**

22. On March 26, 2021, Soliton and AbbVie issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> IRVINE, Calif. and HOUSTON, May 10, 2021 -- Allergan Aesthetics, an AbbVie company (NYSE: ABBV) and Soliton (NASDAQ: SOLY) today announced a definitive agreement under which Allergan Aesthetics will acquire Soliton and RESONICTM, its Rapid Acoustic Pulse device which recently received U.S. Food and Drug Administration (FDA) 510(k) clearance and is a non-invasive treatment for the short-term improvement in the appearance of cellulite. The acquisition of Soliton expands and complements Allergan Aesthetics' Body Contouring treatment portfolio which includes CoolSculpting® Elite.
>
> The novel platform technology uses non-invasive rapid, high-frequency sound waves to disrupt targeted cellular structures and connective tissue, physically impacting the fibrous septae beneath the skin that contribute to the dimpled appearance of cellulite. In clinical trial data submitted to the FDA, after a single treatment session RESONICTM demonstrated significant improvement and strong patient satisfaction with 92.9 percent of subjects agreeing or strongly agreeing their cellulite appeared improved.
>
> "There is a huge unmet need to address cellulite and effective treatments have been elusive and frustrating for consumers," said Carrie Strom, President, Global Allergan Aesthetics and Senior Vice President, AbbVie. "Soliton's technology offers a new, completely non-invasive approach with clinically-proven results to reduce the appearance of cellulite with no patient downtime. The addition of this technology complements Allergan Aesthetics' portfolio of body contouring treatments. Health care providers will now have another option to address consumers' aesthetic concerns."
>
> "Allergan Aesthetics' brand recognition, global footprint, track record and commitment to developing best-in-class aesthetic treatments makes the Company ideally suited to maximize the commercial potential of the RESONICTM rapid acoustic pulse technology," said Walter Klemp, Executive Chairman, Soliton. "I am proud of the passion and accomplishments of the Soliton team and thankful for the ongoing support of our investors which have culminated in this transaction. We look forward to working with Allergan Aesthetics to ensure a successful completion of this transaction."

> Under the terms of the transaction, Allergan Aesthetics will pay $22.60 per share in cash for each outstanding share of Soliton. Soliton's enterprise value for the transaction is approximately $550 million and was approved by the Boards of Directors of both companies. The transaction is subject to customary closing conditions, including clearance by the U.S. antitrust authorities under the Hart-Scott-Rodino Act and approval of Soliton's shareholders. Guggenheim Securities served as financial advisor to Soliton and Hogan Lovells served as legal counsel to Soliton.
>
> RESONIC™ has also received FDA 510(k) clearance for use in conjunction with laser for tattoo removal and has demonstrated clinical results in fibrotic scars.

**Insiders' Interests in the Proposed Transaction**

23. Soliton insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Soliton.

24. Notably, in connection with defendant Capelli's relationship with MD Anderson as the inventor of the intellectual property that Soliton licenses from MD Anderson, according to the Proxy Statement, defendant Capelli:

> is entitled to 50% of the proceeds from the sale by MD Anderson of up to 75,000 shares of Soliton common stock that were issued to MD Anderson in connection with the license agreement. Based on the merger consideration of $22.60 per share for those shares, Dr. Capelli will receive up to $847,500 as his portion of the merger consideration to be paid for those shares in the merger.

Proxy Statement at 62.

25. Further, Company insiders stand to reap substantial financial benefits for securing the deal with AbbVie. Upon consummation of the Proposed Transaction, all vested and unvested Company options, restricted stock units and warrants to purchase Soliton shares will be converted into cash payments. Defendant Hauser stands to receive $4,520,000 in connection with his

restricted stock units and the following tables set forth the value of Soliton options and warrants held by Company insiders:

| | Name | Number of Options(1) (#) | Total Option Consideration(2) ($) |
|---|---|---|---|
| **Non-Employee Directors:** | Jonathan P. Foster | 60,000 | 890,100 |
| | Danika Harrison | 60,000 | 890,100 |
| | Niquette Hunt | 30,000 | 410,400 |
| | Michael Kaminer, M.D. | 45,000 | 748,350 |
| **Executive Officers:** | Walter V. Klemp* | 1,046,950 | 19,584,229 |
| | Bradley Hauser* | 410,000 | 6,294,100 |
| | Christopher Capelli, M.D.* | 1,070,950 | 20,084,629 |
| | Lori Bisson | 403,200 | 7,081,957 |
| | Joe Tanner | 353,200 | 6,303,564 |

| | Name | Number of Warrants(1) (#) | Total Warrant Consideration(2) ($) |
|---|---|---|---|
| **Non-Employee Directors:** | Jonathan P. Foster | 12,500 | 260,625 |
| | Danika Harrison | — | — |
| | Niquette Hunt | — | — |
| | Michael Kaminer, M.D. | — | — |
| **Executive Officers:** | Walter V. Klemp | 27,917 | 582,070 |
| | Bradley Hauser | — | — |
| | Christopher Capelli, M.D. | 27,917 | 582,070 |
| | Lori Bisson | 15,000 | 312,750 |

26. In addition, if they are terminated in connection with the Proposed Transaction, Soliton insiders stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash(1) ($) | Equity(2) ($) | Perquisites/ Benefits(3) ($) | Tax Reimbursement(4) ($) | Total ($) |
|---|---|---|---|---|---|
| Walter V. Klemp | 318,750 | 6,101,849 | — | — | 6,420,599 |
| Bradley Hauser | 1,175,625 | 10,080,375 | — | 250,000 | 11,506,000 |
| Christopher Capelli | 581,250 | 6,101,849 | 40,371 | — | 6,723,470 |
| Lori Bisson | 501,563 | 2,296,117 | 40,371 | — | 2,838,051 |
| Joe Tanner | 383,750 | 1,938,962 | 12,025 | — | 1,951,370 |

**The Proxy Statement Contains Material Misstatements and Omissions**

27. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Soliton's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

28. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information

concerning: (i) Soliton management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, Guggenheim; and (ii) Guggenheim's and Company insiders' potential conflicts of interest. Accordingly, Soliton stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

***Material Omissions Concerning the Company's Financial Projections***

29. The Proxy Statement fails to disclose material information concerning Company management's financial projections.

30. For example, the Proxy Statement sets forth, "Beginning in the late fall of 2020, Soliton senior management, at the direction of the SAC, began to prepare updated financial projections regarding Soliton's financial performance as a standalone company." *Id.* at 29. Then on or around March 5, 2021 "senior management was preparing updated financial projections based on a range of assumptions, and that these updated projections would be presented shortly to Soliton senior management, the Board and the SAC for their review and comment." *Id.* at 31. At a March 11, 2021 Special Committee meeting, "representatives of Guggenheim Securities then reviewed with the SAC a presentation that included the updated financial forecasts from Soliton senior management as well as a preliminary illustrative financial analysis of Soliton on a standalone basis from Guggenheim Securities using the updated financial projections." *Id.* On May 5, 2021:

> The Board reviewed the financial projections prepared by Soliton's senior management and discussed with members of Soliton's management the underlying assumptions. After discussion, the Board authorized and directed Guggenheim Securities to use the specified financial projections in connection with its financial analysis of the potential acquisition of Soliton by AbbVie and the preparation of Guggenheim Securities' fairness opinion.

> Immediately after the Board meeting on May 5, 2021, the SAC held a meeting via videoconference at which representatives of Hogan Lovells and Nelson Mullins were present. After discussion among the participants in the meeting, the SAC authorized and directed Guggenheim Securities to use the specified financial projections in connection with its financial analysis of the potential acquisition of Soliton by AbbVie and in the preparation of Guggenheim Securities' fairness opinion.

*Id.* at 36. The Proxy Statement fails, however, to disclose: (i) the updated projections that Soliton management was preparing in the late fall of 2020; (ii) the updated projections that senior management was preparing on or around March 5, 2021 that were reviewed at the March 11, 2021 Special Committee meeting; and (iii) the assumptions underlying each set of updated projections.

31. Additionally, the Proxy Statement fails to disclose all line items underlying the calculation of unlevered free cash flow.

32. The Proxy Statement also describes Guggenheim's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Guggenheim's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Soliton's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Guggenheim's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

33. With respect to Guggenheim's *Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose: (i) the Company's unlevered free cash flow for year 2031 for the Base Scenario and Moderate Growth Scenario and year 2030 for the Outperform Scenario, utilized by Guggenheim to calculate the Company's terminal value; (ii) quantification of Soliton's terminal value under each scenario; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 11.55% to 14.30%.

34. With respect to Guggenheim's *Discounted Future Value Analysis Based on Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate of 12.0% to 14.0%; and (ii) Guggenheim's basis for applying multiples of 7.0x to 10.0x.

35. With respect to Guggenheim's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the objective selection criteria used to select the companies; and (ii) Guggenheim's basis for applying multiples of 6.5x to 8.5x.

36. With respect to Guggenheim's *Selected Precedent Merger and Acquisition Transactions Analysis*, the Proxy Statement fails to disclose: (i) Guggenheim's basis for applying multiples of 7.0x to 10.0x; and (ii) the closing dates of the transactions.

37. With respect to Guggenheim's *Wall Street Equity Research Analyst Stock Price Targets* analysis, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

38. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinions of Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Guggenheim's and Company Insiders' Potential Conflicts of Interest***

39. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Guggenheim.

40. For example, the Proxy Statement sets forth that, "Aside from its current engagement by Soliton, Guggenheim Securities has not been previously engaged during the past two years by Soliton, nor has Guggenheim Securities been previously engaged during the past two years by AbbVie, to provide financial advisory or investment banking services for which

Guggenheim Securities received fees." *Id.* at 53. Yet, the Proxy Statement fails to disclose whether Guggenheim has performed any services for and received any fees from the Company's largest shareholder, Remeditex Ventures LLC, which owns 42.7% of the Company's common stock.

41. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42. The Proxy Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest.

43. The Proxy Statement fails to disclose whether any of Soliton's executive officers or directors are continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between AbbVie and Soliton's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of AbbVie's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the combined company.

44. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45. The omission of this information renders the statements in the "Opinion of Financial Advisor," "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Soliton will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

47. Plaintiff repeats all previous allegations as if set forth in full.

48. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Soliton management's

financial projections, Guggenheim's financial analyses; and Guggenheim's and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

51. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

53. Plaintiff repeats all previous allegations as if set forth in full.

54. The Individual Defendants acted as controlling persons of Soliton within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Soliton, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.  In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

57.  In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58.  By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.  As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Soliton stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Soliton, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Soliton stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 23, 2021                                          **WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*